UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-274-MOC

| | | |
|---|---|---|
| DOUGLAS F. BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the parties' cross motions for Summary

Judgment. (##10, 11). Having carefully considered such motions and reviewed the pleadings, the

court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff Douglas Bush originally filed for a period of disability and Disability Insurance

Benefits ("DIB") on August 4, 2009, with an alleged onset date of December 31, 2007. (Tr. 64).

His claim was denied initially and again upon reconsideration. Plaintiff requested a hearing,

which was held by an Administrative Law Judge ("ALJ") on February 14, 2011. (Tr. 64). The

ALJ then issued a written decision finding that Plaintiff was not disabled within the meaning of

the Social Security Act. (Tr. 64-72). On June 22, 2011, Plaintiff filed another claim for a period

of disability and DIB under Title II and supplemental security income payments due to disability

under Title XVI of the Social Security Act, with an alleged onset date of March 1, 2011. (Tr. 14).

The Commissioner denied his application initially and again upon reconsideration. (Tr. 140,

149). At Plaintiff's request, ALJ Marshall Riley held a hearing on April 23, 2013, at which

Plaintiff was represented by an attorney. The ALJ found that Plaintiff was not disabled. (Tr. 14,

43). Plaintiff requested review of this decision by the Appeals Council, which denied the request

on August 22, 2014, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-

2). Plaintiff requested and obtained from the Appeals Council an extension of time to file this

civil action reviewing the ALJ's decision. (Tr. 6).

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the

undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are

referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal

standards and whether the Commissioner's decision is supported by substantial evidence.

Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990). Review by a federal court is not de novo, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.

1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal

citations omitted). Even if this court were to find that a preponderance of the evidence weighed

against the Commissioner's decision, the Commissioner's decision would have to be affirmed if

supported by substantial evidence. Hays, 907 F.2d at 1456.

The Fourth Circuit has articulated the following relevant to substantial evidence review:

the district court reviews the record to ensure that the ALJ's factual findings are
supported by substantial evidence and that its legal findings are free of error. If the

reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

## IV.    Substantial Evidence

### A.  Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, this court finds that it is.

### B.  Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The claimant bears the burden of proof during the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden then shifts to the Commissioner at the fifth step to show that work is available in the national economy that the claimant could perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the evaluation process.

**C. The Administrative Decision**

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. (Tr. 16). With an alleged onset date of March 1, 2011, the issue before the ALJ was whether Plaintiff was disabled between that date and the date of decision. (Tr. 16). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16). At Step Two, he determined that Plaintiff had the following severe impairments: a back/neck disorder, depression, anxiety, and a panic disorder without agoraphobia. (Tr. 16). At Step Three, the ALJ found that Plaintiff did not have an impairment that satisfies a disability

listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). At Step Four, the ALJ determined

that Plaintiff had the residual functioning capacity ("RFC") to perform medium work that

involved occasionally lifting or carrying 50 pounds, frequently lifting or carrying 25 pounds,

standing, walking, and/or sitting (with normal breaks) for a total of about 6 hours in an 8 hour

workday, and unlimited capacity for pushing or pulling. (Tr. 18). Additionally, the ALJ

determined the Plaintiff was capable of understanding and remembering simple instructions,

capable of sustained concentration and persistence for simple tasks, and capable of appropriate

social interaction. (Tr. 18). From this, the ALJ determined Plaintiff was unable to perform any

past relevant work. (Tr. 26). Finally, at Step Five, in light of Plaintiff's RFC, age, education, and

work experience, and based on the testimony of the vocational expert, the ALJ determined that

Plaintiff could perform jobs existing in significant numbers in the national economy, including

representative occupations such as janitor, machine operator, and kitchen helper. (Tr. 26-27).

Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 27).

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff presents three challenges to the ALJ's decision, arguing that the ALJ: (1) erred

in failing to find carpal tunnel syndrome ("CTS") to be a severe impairment; (2) improperly

assessed the weight of the medical opinion evidence; and (3) improperly assessed Plaintiff's pain

and credibility. The court will address each assignment of error *seriatim*.

#### 2. First Assignment of Error: Severe Impairment

Plaintiff argues that substantial evidence does not support the ALJ's finding that

Plaintiff's CTS is non-severe. Plaintiff contends that the ALJ's decision in this regard is harmful

error in that it affected the ALJ's assessment of Plaintiff's ability to use his hands in a manner consistent with the Vocational Expert's testimony. After careful consideration, the court finds that substantial evidence exists in this instance to support the ALJ's decision.

For the court to overturn the ALJ's determination, Plaintiff must show the existence of a medically determinable impairment, and then show it is severe. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A non-severe impairment is an impairment (or combination thereof) that does not significantly limit a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 416.921. An impairment is not severe when the medical evidence establishes only "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28.

Plaintiff argues his medical records indicate his CTS qualifies as a severe, medically determinable impairment. He points to medical records from a hand specialist showing the diagnosis of CTS in his right hand, which is his dominant hand. (Tr. 364). He also notes his own reports of limitations caused by his CTS, such as pain when trying to open a jar and numbness and stiff fingers after weeding. (Tr. 363). Lastly, he claims an inability to lift ten pounds with that hand and that he avoids repetitive daily activities such as mopping, dusting, and laundry due to the limitation of CTS in his right hand. (Tr. 50-52). From this, Plaintiff argues his ability to perform basic work activities is significantly limited and he would consequently be unable to perform the jobs described by the Vocational Expert's testimony.

The Commissioner correctly points out, however, that while the ALJ did acknowledge the diagnosis of CTS, no objective medical evidence exists to corroborate Plaintiff's claims that the condition qualifies as a severe impairment within the meaning of the Social Security regulations. (Tr. 22). As Plaintiff acknowledged, a review of the medical evidence shows that no treating physician opined that Plaintiff's CTS causes any limitations on his ability to perform work activities. In fact, one physician stated that Plaintiff had full grip strength and would have no problem using his hands to grasp and manipulate small objects or carry and handle objects. (Tr. 22). Additionally, the only treatment recommended by any physician was for Plaintiff to wear a wrist brace at night, which is a conservative treatment measure. (Tr. 362). As noted earlier, the claimant must satisfy the burden of proof required in the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, Plaintiff provided only his own personal, subjective views on his limitations. Beyond his diagnosis, he did not provide any objective medical evidence of limitations from CTS to satisfy his burden of proof. In light of the lack of medical evidence showing that Plaintiff experiences limitations on work activities due to CTS, the court finds no error in the ALJ's decision to find Plaintiff's CTS non-severe.

### 3. *Second Assignment of Error: Weight of Medical Opinion Evidence*

Plaintiff also argues that the ALJ improperly weighed medical opinion evidence. An ALJ must evaluate every medical opinion in the record. See 20 C.F.R. § 404.1527(c). "Medical opinions" within the meaning of the Social Security regulations are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis,

what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Under governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R. § 416.927). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). In such circumstances, the ALJ has discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating physician's opinion is not given controlling weight, the ALJ is obligated to evaluate and weigh the medical opinion pursuant to the following factors: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005))). If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2). The ALJ's explanation of these "good reasons" must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996).

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." Love-Moore v. Colvin, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing Hill v. Astrue, 698 F.3d 2253, 1159-60 (9th Cir. 2012); Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747, 750 (6th Cir. 2007); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)). "[F]ederal courts have remanded decisions of the Commissioner when they fail to articulate 'good reasons' for discrediting the opinion of a treating source, as expressly required by 20 C.F.R. § 404.1527(d)(2)." Newhart v. Colvin, 6:13-CV-01606, 2014 WL 1330929 (S.D.W. Va. Mar. 31, 2014). See also Halloran v. Barnhart, 362 F.3d 28, 33 (2nd Cir. 2004); Stroup v. Apfel, 205 F.3d 1334, at *6 (4th Cir. 2000) (both remanding based on ALJ's failure to explain reasoning for rejecting treating source's opinion).

Plaintiff first argues that the ALJ improperly discredited the opinion of treating physician Dr. Michael Meador. Plaintiff cites a ten-question form, prepared by Plaintiff's attorney, which Dr. Meador filled out by circling "yes" or "no," in which he endorsed Plaintiff's complaints of pain, difficulty concentrating, need for unscheduled breaks, and opined that such conditions were consistent with his medical data and observations. (Tr. 406-07). Since Dr. Meador has treated Plaintiff for over three years, Plaintiff argues that Dr. Meador is consequently a treating physician as defined by regulation and his opinion should be given controlling weight, instead of the minimal weight given by the ALJ. Plaintiff also claims the ALJ failed to articulate contrary

medical evidence, failed to reference the factors for weighing opinion evidence, and failed to articulate what explanation Dr. Meador was supposed to offer instead.

The court finds no error in the ALJ's consideration of Dr. Meador's opinion. Here, the ALJ discussed Dr. Meador's treatment of Plaintiff and specifically noted that a treating physician's medical opinion is entitled to special significance, and assigned controlling weight if supported by objective evidence and consistent with the record. (Tr. 23). The ALJ then explained his reasoning for denying controlling weight to Dr. Meador's opinion, stating that "due to the vague and conclusory nature of the responses with very little explanation of the evidence relied on in forming his opinion, the undersigned gives the opinion of Dr. Meador little weight." (Tr. 23). Contrary to Plaintiff's assertions, the Social Security regulations provide that vagueness and lack of explanation are valid justifications for giving less weight to an opinion. See C.F.R. 20 § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Thus, the court finds no error given that the ALJ specifically cited vagueness and lack of explanation as reasons for giving Dr. Meador's opinion less weight. (Tr. 23).

The court also notes that Dr. Meador's opinion fails to discuss any specific impairments, provides no objective evidence, and does not discuss any clinical findings. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001; 20 C.F.R. § 416.927). Dr. Meador provided no objective evidence to support his responses, or even reference or discuss any objective evidence he relied on in evaluating Plaintiff. (Tr. 406-07). In fact, Dr. Meador did not provide a diagnosis or ever mention what impairment Plaintiff has that will cause him to be absent from work more than

three times per month. (Tr. 407). Additionally, Dr. Meador's opinion is internally inconsistent. Dr. Meador opined that, since February 2011, no change or improvement was expected. (Tr. 407). The prior Unfavorable Decision, dated February 28, 2011, found Plaintiff was not disabled. (Tr. 61-72). For Plaintiff to be found disabled now, there would have to have been a significant change from February 2011.

Finally, the court notes that substantial evidence of record discussed by the ALJ contradicts Dr. Meador's opinion. For example, the ALJ cited a medical opinion from consultative examiner Dr. Gloor, which was assigned some weight. This exam, conducted in September 2011, acknowledged Plaintiff's neck pain, back pain, anxiety, and depression, but also highlighted Plaintiff's capabilities: negative straight leg testing, no evidence of scoliosis, full grip strength, ability to heel walk, toe walk, and tandem walk without difficulty. (Tr. 22, 306). It also noted that Plaintiff would not be expected to have any difficulty carrying or handling objects and that he was expected to be able to work overhead. (Tr. 22, 306). This opinion directly conflicts with the opinion offered by Dr. Meador.

In light of the fact that Dr. Meador's opinion is vague and unsubstantiated, internally inconsistent, fails to discuss any specific impairments, provides no objective evidence, does not discuss any clinical findings, and is inconsistent with other evidence of record, the court finds no errors in the ALJ's evaluation of Dr. Meador's opinion.[1]

---

[1] Plaintiff urges the court to remand this matter based on the ALJ's failure to articulate "good reasons" for not assigning controlling weight to Dr. Meador. While this court has remanded cases in the past for such failures, see Troughton v. Colvin, 2014 U.S. Dist. LEXIS 153058, at *7 (W.D.N.C. 2014) ("The . . . reasons offered as inconsistencies do not reference medical evidence . . . [and] are factual discrepancies which, while worthy of note, are not so conflicting as to render the treating physicians' opinions inaccurate or unreliable without further explanation."), the court does not believe that remand is appropriate here given the thorough discussion of conflicting medical evidence and the other reasons explained herein.

Plaintiff also argues the ALJ erroneously weighed the opinion of Mr. Hart, a licensed professional counselor who treated Plaintiff for several years. Mr. Hart opined on Plaintiff's mental capacity when assessing the severity of Plaintiff's impairments and related effects on his functioning. (Tr. 412-14). Mr. Hart opined, *inter alia*, that Plaintiff had mild, moderate, and marked limitations in his understanding and memory, sustained concentration and persistence, social interaction, and adaptation, and that claimant would likely miss more than 4 days per month as a result of his impairments. (Tr. 24, 409-14). After careful consideration, the court is satisfied that the ALJ took into account Mr. Hart's opinions and that the ALJ's rationale for discounting them is reasonably articulated. The ALJ discussed Mr. Hart's opinion as coming from an "other source," rather than an "acceptable medical source," and correctly stated that it may be used to show the severity of an impairment and how it affects a person's ability to function. (Tr. 23). See 20 C.F.R. § 404.1502; 406.902; SSR 06-03p, 2006 WL 2329939, at *2. The ALJ gave Mr. Hart's opinion little weight since "it is entirely inconsistent with the medical evidence of record and claimant's own previous reports of his daily activities." (Tr. 24). Such reports include Plaintiff's statements at RHA Health Services from 2011-2013 that his medications were beneficial, he was feeling modestly better, and he was exhibiting no side effects. (Tr. 23 (citing Ex. 16F)). During his last visit of record at RHA Health Services in February 2013, a mental status examination showed he was within normal limits, including a fair thought process, fair insight and judgment, and intact recent and remote memory. (Tr. 23, 374). In contrast, Mr. Hart's opinion claimed Plaintiff's ability to remember locations, procedures, and instructions was impaired. (Tr. 410-412). Because substantial medical evidence of record is

inconsistent with Mr. Hart's opinion, the court finds no error in the ALJ's decision to give Mr. Hart's opinion little weight.

Plaintiff also argues that the ALJ wrongly attributed great weight to the opinion of Dr. Newman, a State Agency psychological consultant who completed a mental RFC assessment on March 1, 2012, over the opinion of Dr. Hart. (Tr. 25). Plaintiff argues that Dr. Newman erred in finding that Plaintiff is capable of "appropriate social interaction" in the workplace, but also limiting Plaintiff to an RFC for simple routine, repetitive tasks in a low-social setting. (Tr. 118, 121). The court does not believe the two findings to be mutually exclusive.[2] Additionally, Plaintiff argues that Dr. Newman's opinion was unfairly prejudicial by failing to reference the limitations attendant to Plaintiff's "below average stress tolerance" assessed by Dr. Deborah Barnett. (Tr. 114). The court notes that Dr. Barnett's opinion was given little weight by both the ALJ and Dr. Newman due to Dr. Barnett's status as a non-examiner, and thus, the court does not find issue with Dr. Newman's lack of reference to her assessment. (Tr. 21) The court therefore finds no error in the ALJ's decision to give great weight to Dr. Newman's assessment.

---

[2] The court notes that it has considered this argument in light of Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), which held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. (internal citation omitted). Here, Dr. Newman's mental RFC assessment included mild limitations in concentration, persistence, and pace. (Tr. 25). Even though the ALJ gave Dr. Newman's opinion great weight to the extent it was consistent with his RFC, the RFC ultimately developed by the ALJ in this case did not include any limitations on concentration, persistence, and pace. (Tr. 18). Instead, it found that Plaintiff was capable of understanding and remembering simple instructions, sustained concentration and persistence for simple tasks, and appropriate social interaction. The ALJ specifically noted that "the recent medical evidence of record is unsupportive of moderate difficulties in maintaining concentration, persistence, or pain." (Tr. 25). The court therefore finds that to the extent that Dr. Newman's opinion was internally consistent, it did not affect the RFC developed in this case.

### *4. Third Assignment of Error: Pain and Credibility*

Finally, Plaintiff argues the ALJ improperly assessed Plaintiff's pain and credibility. The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. SSR 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct standard and method for evaluating claims of pain and other subjective symptoms has developed from the Fourth Circuit's decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof . . . the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating such a subjective complaint was developed by the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R. § 404.1529; SSR 96-7p.[3]

---

[3] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595; see also 20 C.F.R. § 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Craig, 76 F.3d at 595. If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96-7p; Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) ("credibility determinations . . . should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." Hammond, 765

_____

credibility of the individual's statements in the disability determination or decision." SSR 96-7p (statement of purpose).

-15-

F.2d at 426 (internal citations omitted). Additionally, to the extent that the ALJ uses what has been characterized by the Fourth Circuit as "boilerplate language" on the credibility assessment, the court notes that such use of boilerplate language alone does not suffice to inform the reviewing court of the specific evidence considered in determining a claimant's credibility. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). However, such use constitutes harmless error if the ALJ properly analyzes credibility elsewhere in his decision. Id.

Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 18). At the second step, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent they are inconsistent with his RFC. (Tr. 18). As noted above, the ALJ is tasked with the duty to provide specific reasons for discrediting a claimant's testimony in this manner. Additionally, use of boilerplate language alone is insufficient. Here, the court notes that the ALJ did use boilerplate language to describe his assessment of Plaintiff's credibility relative to the RFC assessment. (Tr. 18). However, the court finds that the ALJ properly analyzed Plaintiff's credibility elsewhere in his decision:

> The undersigned notes that the claimant has not received the type of medical treatment one would expect for a totally disabled individual and the record reflects relatively infrequent trips to the doctor for the allegedly disabling symptoms and that the treatment received has been essentially routine and conservative in nature. The undersigned notes that claimant testified to an extremely limited lifestyle at the hearing, however, as outlined above, claimant's allegations and reports of functional limitations are neither supported by the objective medical evidence of record or his previous reports of activities of daily living.

(Tr. 25). As such, the court finds that the ALJ's use of boilerplate language in his credibility and RFC assessments constitutes harmless error, as the ALJ establishes specific reasoning to inform

the reviewing court of the evidence justifying his credibility assessment elsewhere in the decision. See Mascio, 780 F.3d at 636.

The ALJ provides the requisite specific reasons for discrediting Plaintiff's assertions and that his decision is thus justified. Throughout his decision, the ALJ properly considers and discusses why he refuses to give full credit to Plaintiff's testimony and other statements concerning pain, his medical history, and objective medical evidence of pain. (Tr. 18-26). For example, while Plaintiff argues that no physician has contested his asserted symptoms, the record indicates otherwise. Though Plaintiff asserts the need for a cane to help him walk due to pain, the ALJ noted that a September 2011 evaluation showed Plaintiff's gait was "non-antalgic," and that Dr. Levin's October 2011 evaluation showed Plaintiff's "gait and use of a cane is . . . inconsistent with x-ray findings and his ability to heel walk, toe walk, squat and rise, and tandem walk forward and backward without difficulty." (Tr. 24). Similarly, Dr. Caviness noted that the medical evidence of record does not document the prescription of a cane for even minimal assistance. (Tr. 102). Additionally, the ALJ noted Plaintiff's claim of foot pain and arthritis in his right foot, but also noted that x-rays of his right ankle detected no abnormalities. (Tr. 23).

The ALJ went on to note that Plaintiff has never been treated with anything but conservative measures, and has nevertheless responded well to such treatments. He points out that Plaintiff requires only minimal treatment for his anxiety disorder, which is well-managed with medication. (Tr. 20). He acknowledges Plaintiff's low back and neck pain, but also the prescribed treatments of Ibuprofen, heat, and ice. (Tr. 19). The ALJ does note Plaintiff's diagnosis of mild CTS as the source of Plaintiff's wrist pain. (Tr. 22). As mentioned earlier, however, though he was diagnosed with CTS, Plaintiff's only treatment was to wear a wrist

brace at night and to follow up four months after diagnosis, though the record does not say whether he completed such follow-up. (Tr. 362). As the ALJ stated, "the claimant has not received the type of medical treatment one would expect for a totally disabled individual." (Tr. 25). These are appropriate factors for an ALJ to take into account when determining if a claim of total disability is genuine, and together they provide substantial evidence in support of the ALJ's decision. See Wilson v. Comm'r Soc. Sec. Admin., No. 97-1674, 1998 WL 647031, at *1 (4th Cir. 1998) (unpublished) (stating that claimant's doctors "recommended only conservative treatment, which does not suggest that his pain is . . . disabling"); McKenzie v. Comm'r Soc. Sec. Admin., No. 99-3400, 2000 WL 687680, *4 (6th Cir. 2000) (finding that a plaintiff's complaints of disabling pain were "undermined by his non aggressive treatment," which included only medication and chiropractic treatment).

Plaintiff also argues that the ALJ failed to take into account each report of his pain and symptoms when assessing his RFC and that this affected the unfavorable disability determination. The court notes, however, that an RFC is not a recitation of impairments or symptoms themselves, but rather a measure of what an individual can do despite his impairments. 20 C.F.R. § 404.1545(a); Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006); Medina v. Astrue, 584 F. Supp. 2d 814, 821 (W.D.N.C. 2008). Accordingly, the RFC deals with the limitations arising out of Plaintiff's impairments and systems, rather than making an exhaustive list of such impairments. For example, the ALJ used recent medical evidence to limit Plaintiff's RFC from pushing and pulling in the right lower extremity, occasionally climbing stairs and ladders, avoiding exposure to hazards, and other restrictions. (Tr. 24). The ALJ also limited Plaintiff to "understanding and remembering simple instructions" and "sustained

concentration and persistence for simple tasks," in accordance with recent mental evaluations. (Tr. 18, 25). While Plaintiff argues that the ALJ did not take into account his most recent testimony (from the 2013 hearing) regarding pain, the court notes that the ALJ explicitly referenced the "extremely limited lifestyle" to which Plaintiff testified at such hearing, but found it not credible to the extent it conflicted with the medical evidence described above. (Tr. 25). This was an appropriate determination by the ALJ, as Plaintiff's own testimonials are not objective medical evidence, and subjective testimony of pain is insufficient to sustain a finding of disability. See 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

Lastly, Plaintiff argues that the ALJ wrongly removed the restriction on social capability, despite its presence in Plaintiff's RFC from his prior assessment for disability in 2009. (Tr. 68). Plaintiff claims the removal of the social restriction substantially increases the number of jobs available to Plaintiff, thus prejudicing the ALJ's finding at Step Five that Plaintiff is capable of work. However, the ALJ discussed the weight given to the two most recent psychological examiners (Tr. 25), and noted the current medical evidence was unsupportive of the social restriction. The ALJ specifically noted that Dr. Newman's current RFC mental assessment from 2012, to which he gave great weight, found Plaintiff to be capable of "appropriate social interaction" at work, as well as capable of understanding and remembering simple instructions. (Tr. 25). Dr. Newman's opinion is substantial evidence that the ALJ may rely upon when considering whether Plaintiff experiences functional limitations allegedly caused by his impairments. ALJs must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical

specialists as opinion evidence, except for the ultimate determination about whether a claimant is disabled. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Consequently, the court finds no error in the ALJ's removal of the social restriction.

As a result of the above analysis, the court finds substantial evidence supporting the ALJ's decision and overrules Plaintiff's assignments of error regarding the determination of pain and credibility.

## V.     Conclusion

This court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is

    **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (#10) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (#11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: June 17, 2015

Max O. Cogburn Jr.
United States District Judge